UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLIE BOTHUELL, IV,    Case No. 16-11009

    Plaintiff,    Nancy G. Edmunds
v.    United States District Judge

NANCY GRACE, *et al,*    Stephanie Dawkins Davis
        United States Magistrate Judge
    Defendants.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION TO DISMISS [Dkt. 14]**

**I.    PROCEDURAL HISTORY**

On February 23, 2016, plaintiff Charlie Bothuell, IV filed a complaint in the Wayne County Circuit Court alleging that defamatory statements were made about him on the HLN Cable News Channel and on the Internet after he was charged by the Wayne County Prosecutor's Office with felony torture and second degree child abuse charges. (Dkt. 1, Pg ID 7-13). Defendants Nancy Grace and Time Warner, Inc. (collectively "defendants") removed the matter from Wayne County to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[1] Following removal, plaintiff filed an amended complaint and jury demand alleging defamation (Count

---

[1] Defendants assert that plaintiff incorrectly names "*The Nancy Grace Show*," which is a program, but is not a distinct legal entity. Plaintiff has not made a counter-argument on this point.

1

I), and false light invasion of privacy (Count II). (Dkt. 5). Plaintiff seeks compensatory and exemplary damages together with equitable relief prohibiting future acts of wrongdoing. (Dkt. 5, Pg ID 26). On April 13, 2016, District Judge Nancy G. Edmunds entered an order referring all pretrial matters to the undersigned. (Dkt. 8). On May 26, 2016, defendants filed a motion to dismiss or alternatively one for summary judgment (Dkt. 14), plaintiff responded (Dkt. 20) and defendants filed a reply (Dkt. 22).[2]

The undersigned has fully reviewed the pleadings associated with defendants' motion to dismiss (Dkt. 14) and is otherwise fully advised, and for the reasons set forth below **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** in its entirety.

## II. FACTUAL BACKGROUND

The underlying facts of this case concern the search for plaintiff's minor son, Charlie Bothuell, V ("Charlie V") after plaintiff and his wife, Monique Arnel Dillard-Bothuell (Ms. Dillard-Bothuell) reported him missing in the summer of 2014.[3] Following the reports of Charlie V as missing, community members and law enforcement authorities began searching for the boy. Additionally, in an

---

[2] The court notes that defendants have alternatively moved for summary judgment and have attached exhibits to their motion that cannot, and have not, been considered under the court's 12(b)(6) review. The court has more specifically addressed this issue *infra*.

[3] Ms. Dillard Bothuell is Charlie V's step-mother.

effort to locate Charlie V, Nancy Grace publicized his disappearance on her television program, The Nancy Grace Show ("The Show"). In furtherance of the cause, Nancy Grace also invited plaintiff to appear on The Show in June 2014. During the telecast of the June 2014 show on which plaintiff appeared, Ms. Grace learned that law enforcement authorities had found Charlie V alive in plaintiff's basement. She informed plaintiff of his son's discovery on the air, and his reaction to the news of his son being found alive was captured live on The Show.

About eight months later, on February 20, 2015, the Wayne County Prosecutor's Office charged plaintiff and his wife with torture and second degree child abuse of Charlie V. (Dkt. 14-6, Felony Complaint and Felony Information, both filed by the Wayne County Prosecuting Attorney's Office, together with a public announcement of the charges issued by the Prosecutor's Office, Pg ID 98-101). Plaintiff alleges that defendants made defamatory statements about him on its television news channel and on the internet following the criminal charge. Three specific telecasts[4] are at issue here: first, a February 23, 2015 telecast wherein Nancy Grace reported the charges against plaintiff on The Show, (Dkt. 14-3, Pg ID 95); second, a follow-up telecast that aired on March 30, 2015, that detailed expert medical testimony offered by the prosecutor and covered plaintiff's

---

[4] Due to a technical issue, the Court was unable to view the judge's copy of the original DVDs that were filed as Dkt. 14, Exhibits B, C and D. As a result, defendants sent duplicate copies of these exhibits which the Court successfully reviewed.

defense strategy, (Dkt. 14-4, Pg ID 96); and finally, a second follow-up telecast that aired on April 29, 2015, that reported on Charlie V's testimony about his abuse and on the denials of the accusations by plaintiff's attorneys, (Dkt. 14-5, Pg ID 97). The three telecasts are collectively referred to herein as "the Telecasts."

Plaintiff's specific complaints are that the defendants broadcasted false information about him and the case, evidence, and allegations against him, "while accusing him of the most heinous possible crime: longstanding torture of his minor child, Charlie Bothuell, V." (Dkt. 5, Pg ID 23). Plaintiff specifically alleges that the following statements, written words, graphics, and/or photographs made by defendants were "knowingly false":

- That there were markings all over Charlie Bothuell V's body that correspond to a particular PVC pipe used by plaintiff to beat his son;
- That a bloody PVC pipe was found in plaintiff's home, which was used to beat Charlie V until he was bloody;
- That Charlie V was found shivering, thin, and hunrgy;
- That Charlie V was beaten when he did not complete workouts;
- That plaintiff was a "garden variety sadist";
- That plaintiff forced Charlie V to complete a workout routine that was torturous;
- That no person except the top athletes in the world could complete said workouts;
- That Charlie V's bloody clothes were found in plaintiff's home;
- That Charlie V was not given any food;
- That Charlie V would have to forage for food

4

> when he thought plaintiff and his step-mother were gone;
> - That Charlie V was systematically tortured by plaintiff;
> - Suggesting that plaintiff was not searching for Charlie V while he was missing in 2014;
> - That Charlie V's clothes were bloody, along with a "representation" of his bloody clothes;
> - That Charlie V was "found in a tiny sealed off room" with a completely fabricated graphic of a room that did not exist, including this imaginary room's dimensions.

(*Id.*, Pg ID 23-24). Plaintiff claims that he was forced to shut down his business and also lost his job as a registered nurse as a result of defendants' fabrications. Moreover, plaintiff alleges that though the torture charge against him was ultimately dismissed by the 36th District Court, (Dkt. 5, Pg ID 24), defendants refused to provide a retraction to their allegedly defamatory statements. (Dkt. 20, Pg ID 155). As a result, plaintiff filed the instant action alleging defamation and false light invasion of privacy for which he seeks compensatory, exemplary, and injunctive relief.

Defendants, on the other hand, argue that the Telecasts clearly communicate that plaintiff and Ms. Dillard-Bothuell both had been charged with, but had not been convicted, of various crimes. Indeed, defendants point out that Nancy Grace used the words "*charged*" (or variations of that term) almost twenty times during the course of the February 23 telecast alone. Furthermore, defendants argue that

5

the information cited and conveyed in the three Telecasts about the allegations against plaintiff and Ms. Dillard-Bothuell was consistent with what was available in the public record of the criminal case. Defendants challenge plaintiff's lawsuit on the merits for two primary reasons: (1) the Telecasts accurately report on the charges that had been brought against plaintiff; thus, rendering plaintiff incapable of proving falsity–a central requirement of a defamation and false light claim; and (2) the Telecasts were "grounded" in statements made in public documents. Because a controlling Michigan statute immunizes the media from liability when it accurately reports on such matters of pubic record, defendants contend that plaintiff's claims also fail for this reason.

### III.  LEGAL ANALYSIS & CONCLUSIONS

####  A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of*

6

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

 "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life*

*Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747, *3 (E.D. Mich. 2011) (A court may also consider "matters of public record," such as documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6)); *cf Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). In addition, the district court has recently concluded that the DVD of a television broadcast central to a plaintiff's complaint allegations can be used in the context of a Rule 12(b)(6) motion without transforming it into one for summary judgment. *See Hazime v. Fox TV Stations*, No. 12-15072, 2013 WL 4483485 (E.D. Mich. Aug. 19, 2013) (Edmunds, J.)

When deciding a state law claim based on supplemental jurisdiction, a federal court is "bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). In diversity cases, this Court is required to apply state law in accordance with the controlling decisions of the Michigan Supreme Court. *NAS Sur Group v Cooper Ins. Ctr., Inc.*, 617 F. Supp. 2d 581 (W.D. Mich. 2007); *Erie R R Co. v. Tompkins*, 304 U.S. 64 (1938); *Bailey Farms, Inc v. NOR-AM Chem Co.*, 27 F3d 188, 191 (6th Cir. 1994). If the state Supreme

8

Court has not yet addressed the issue presented, this Court must predict how it would rule, by looking to "all available data," including state appellate decisions. *Safeco Ins. Co. of Am. v. CPI Plastics Group, Ltd.*, 625 F. Supp. `2d 508 (E.D. Mich. 2008); *Kingsley Associates, Inc. v. Moll Plastic Crafters*, *Inc*, 65 F.3d 498, 507 (6th Cir. 2000).

B.     Legal Analysis

As an initial matter, defendants advocate for the court to analyze this case as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and cite First Amendment cases supporting the same. (Dkt. 14, Pg ID 51-53) (*citing, e.g., Hajime v. Fox TV Stations,* No. 12-15072 (E.D. Mich. Aug. 19, 2013) (in the context of a 12(b)(6) motion, the district court considered the DVD of a television broadcast that plaintiffs referenced in their complaint and was central to their defamation claims and other torts); *DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*, No. 12-12867 (E.D. Mich., Nov. 26, 2012) (the district court allowed the use of a DVD broadcast when considering defendant's motion to dismiss because the broadcast was central to plaintiff's defamation claims and the complaint referred to it)). The court finds that because the Telecasts are referenced in plaintiff's complaint and are central to plaintiff's claims, they are within the strictures of a 12(b)(6) review. With respect to the documents attached to defendants' motion, i.e., the felony complaint, the felony information, together with the public

9

announcement of charges issued by the Wayne County Prosecutor's Office, the undersigned further concludes that these documents are "public records" as defined by Michigan law and therefore under the purview of a 12(b)(6) review. Indeed, M.C.L. § 15.232 defines a public record as "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." Mich. Comp. Laws Ann. § 15.232 (West). The charges by the Wayne County Prosecutor's Office are also referenced in plaintiff's complaint, and are a central to his defamation claim to the extent that plaintiff claims the defendants broadcast false information about him concerning the crimes with which he was charged. (Dkt. 5, Pg ID 22-23).[5]

The question of whether the Telecasts are defamatory in nature is a question of law that can be decided by the Court. *See Hunter v. Paramount Stations Group, Inc.*, No. 95-75355, 1996 WL 426494, *3 (E.D. Mich. Apr. 22, 1996) (citing *Fisher v. Detroit Free Press*, 158 Mich. App. 409, 413, *leave denied*, 428 Mich. 912, *reh'g denied*, 429 Mich. 882 (1987)). Additionally, it is well-settled that truth is an absolute defense in an action for defamation. *Hunter*, 1996 WL at *3

---

[5]Defendants attach additional documents to their motion, namely exhibits G, H and I which the undersigned deems neither public records nor central to plaintiff's claims. While defendants advocate for the Court to treat their motion as one for summary judgement under Fed. R. Civ. P. 56 if the exhibits are deemed outside of the pleadings and public records, the undersigned declines to do so as the remainder of the motion is not properly framed for summary judgement consideration. Therefore, exhibits G, H and I are not considered for purposes of this motion.

10

(citing *Locricchio v. Evening News Assoc.*, 438 Mich. 84, 121, *cert. denied*, 112 S. Ct. 1267 (1992)). Moreover, "in cases involving a private plaintiff, a defendant that is a member of the news media, and a publication regarding an area of public concern, the Constitution requires that the plaintiff bear the burden of proving falsity." *Hunter*, 1996 WL at *3 (citing *Northland Wheels Roller Skating Ctr. v. Detroit Free Press*, 213 Mich. App. 317, 323 (1995)). Like *Hunter*, the instant case involves (1) a private plaintiff; (2) news media defendants; and in view of the public's solicitation for assistance as well as the public's general public safety and law enforcement interests in the return of a missing child (3) a publication (here broadcasts) regarding an area of public concern. Consequently, plaintiff bears the burden of proving falsity.

In *Fisher*, *supra*, the Michigan Court of Appeals instructed that "truth" means only substantial truth, not literal truth. In other words, "if the gist, the sting, of the article is substantially true, the defendant is not liable" where an inaccuracy "does not alter the complexion of the charge and would have no different effect on the reader than that which the literal truth would produce." *Fisher*, 158 Mich. App. at 414; *see also Rouch v. Enquirer & News of Battle Creek Michigan,* 440 Mich. 238 (1992) ("The common law has never required defendants to prove that a publication is literally and absolutely accurate in every minute detail."). Expounding on the issue, the Michigan Supreme Court in *Rouch*

11

reasoned that "minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Rouch*, 440 Mich. at 260 (quoting *Mason v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (internal quotation marks and citations omitted)).

      1. Material Falsity

In the instant case, defendants argue that plaintiff's complaint fails to make out a plausible case that he can show material falsity. Plaintiff's allegations center on how defendants' three Telecasts defamed him by reporting that he had been charged with torture and child abuse. (Dkt. 5, ¶¶ 9-13). However, as plaintiff acknowledged in his Amended Complaint, on February 20, 2015 the Wayne County Prosecutor's Office did, in fact, charge him with Felony Torture and 2nd Degree Child Abuse. (Dkt. 5, ¶ 9). The court also notes that defendants have attached the felony complaint, felony information and the Wayne County Prosecuting Attorney Office's official press release which all indicate that plaintiff and his wife, Ms. Dillard-Bothuell, had been charged with torture and second degree child abuse. (Dkt. 14-6, Pg ID 98-101). With respect to the specific statements that plaintiff alleges were made in the Telecasts, the Court finds that plaintiff has not shown that any of these statements rendered the Telecasts

materially false. Plaintiff alleges that within the Telecasts defendants made the following statements, or used words, graphics or photographs what were "knowingly false":

1. That Charlie V was found with bruises, cuts, and scars all over his body–some of which correspond to a particular pvc pipe used by plaintiff to beat his son and make all of those markings on his body;
2. That a bloody pipe was found in plaintiff's home that he used to beat Charlie V until he was bloody and his skin was broken open;
3. That Charlie V was found shivering, thin, and hungry;
4. That Charlie V was beaten when he did not complete workouts;
5. That plaintiff was a "garden variety sadist";
6. That plaintiff forced Charlie V to complete a workout routine that was torturous;
7. That no person except the top athletes in the world could complete said workouts;
8. That Charlie V's bloody clothes were found in plaintiff's home;
9. That Charlie V was not given any food;
10. That Charlie V had to forage for food when he thought plaintiff and Ms. Dillard-Bothuell were gone;
11. That Charlie V was systematically tortured by plaintiff;
12. Suggesting that plaintiff was not really searching for Charlie V while he was missing in 2014;
13. That Charlie V's clothes were found bloody, along with a fabricated graphic "representation" of his bloodied clothes;
14. That Charlie V was "found in a tiny sealed-off room" complete with a completely fabricated graphic of a room that did not exist.

The undersigned has reviewed the Telecasts and concludes that they are not capable of defamatory meaning. First, the Court notes that plaintiff's more

13

particularized grievances correspond to allegations made by the Wayne County Prosecutor in public filings. Indeed, in the charging documents, the Prosecutor's Office noted the following in its official Press Release: 1) Charlie V was found behind boxes in the basement of plaintiff's home; 2) Charlie V was observed to be very thin, with marks on his upper body; 3) it is alleged that plaintiff and Ms. Dillard-Bothuell systematically physically abused Charlie V; 4) Charlie V was forced to live in the basement and not socialize with others; 5) Charlie V was intentionally deprived of food; 6) Charlie V was forced to engage in an extreme and unreasonable exercise regime; 7) plaintiff and Ms. Dillard-Bothuell were charged with torture and second degree child abuse; 8) this was the first time that the Wayne County Prosecutor's Office has charged torture for a child who is alive. Adding, "[i]f any case warrants child torture charges, this one certainly does." (Dkt. 14-6, Pg ID 101). The Court also believes that there is ample evidence in the aforementioned documents to support defendants' statements in the Telecasts that Charlie V's clothing was found bloodied. Indeed, the prosecutor noted that Charlie V was found with marks on his upper body and that plaintiff systematically abused Charlie V. (Dkt. 14-6, Pg ID 101). The prosecutor also noted that plaintiff was being charged with child abuse and torture. (*Id*.) Notably, plaintiff in fact, pleaded guilty to a child abuse charge. (Dkt. 14-7, Pg. ID 103). And, while the torture charge was dismissed at some point after the telecasts aired,

14

the gist or sting of the Telecasts was substantially true.

The Court also agrees with defendants that opinions stated on The Show regarding plaintiff being a "garden variety sadist," or that no person except the top athletes in the world could complete the workouts that Charlie V had to endure cannot amount to a defamatory meaning. Indeed, in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990), the Court held that "a statement of opinion relating to matters of public concern which does contain a provably false factual connotation will receive full constitutional protection," and that First Amendment protection is afforded to "statements that cannot reasonably [be] interpreted as stating actual facts about an individual" because "[t]his provides assurance that public debate will not suffer for lack of imaginative expression or rhetorical hyperbole which has traditionally added much to the discourse of our Nation." (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (internal quotation marks omitted)).

In sum, this court agrees with defendants that plaintiff fails to state a claim for defamation as he cannot plausibly claim that the Telecasts are materially false. Defendants are therefore entitled to a dismissal on Count I pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. Public Report Privilege

In addition, most jurisdictions recognize an absolute privilege for news

reports of judicial proceedings so long as the reporting is substantially accurate. *See* RESTATEMENT (SECOND) OF TORTS § 611; PROSSER ON TORTS § 116, 4th Ed. Michigan has codified this privilege. Mich. Comp. Laws Ann. § 600.2911(3) provides in relevant part:

> Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report.

(*Id*.) The issue of privilege is a matter of law for the Court to decide. *Hunter*, 1996 WL, at *3 (citing *Lawrence v. Fox*, 357 Mich. 134, 146 (1959)). As noted *supra*, defendants' reporting in the Telecasts was a fair and true summary of the information contained in the public record, public and official proceedings, and public announcements. As defendants point out, in Michigan, a report is considered "fair and true" if it captures the gist or sting of the public record, announcement or proceeding. *See Northland Wheels Roller Skating Center, Inc. v. Detroit Free Press*, 213 Mich. App. 317, 325 (1995). That is, "where the inaccuracy does not alter the complexion of the charge and would have no different effect on the reader than that which the literal truth would produce, absent proof that such variance caused the plaintiff damage." (*Id*.) As in

16

*Northland*, and as discussed above, plaintiff has failed to establish "material falsity under the substantial truth doctrine." It cannot be said that any of the statements made in the Telecasts would have a different effect on the mind of the viewer from that which the pleaded truth would have produced. For this additional reason, defendants are entitled to dismissal of Count I under Fed. R. Civ. P. 12(b)(6).

### 3. False Light Claim

Finally, plaintiff's false light claim fails for the same reasons that he cannot make out a claim for defamation–namely, to bring a successful claim for false light, a litigant must show that the statement in question was materially false and that defendants "acted with knowledge of or in reckless disregard regarding the falsity of the publicized matter and the false light in which the plaintiff would be placed." *See Robb v. Fair Housing Center*, No. 259367, 2006 WL 2683323, *4 (Mich. Ct. App. Sept. 19, 2006) (citing *Sawabini v. Desenberg*, 143 Mich. App. 373, 381 n.1 (1985)). Incorporating the Court's reasoning *supra*, defendants are thus entitled to a dismissal of Count II under Fed. R. Civ. P. 12(b)(6).

## IV. RECOMMENDATION

For the above-stated reasons, the court **RECOMMENDS** that defendants' motion to dismiss (Dkt. 13) be **GRANTED** in its entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 16, 2017      s/Stephanie Dawkins Davis
                   Stephanie Dawkins Davis
                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I certify that on <u>February 16, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Charlie Bothuell, IV, 2424 Fordham Street, Keego Harbor, MI 48320.</u>

                                          <u>s/Tammy Hallwood</u>
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov